STATE OF NEBRASKA, APPELLEE, V. ARVELL COOK, APPELLANT.

601 N.W. 2d 501

Filed September 17, 1999.    No. S-98-1128.

John J. Reefe III for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The appellant, Arvell Cook, is currently in custody and serving a sentence for first degree murder and use of a firearm to commit a felony. Cook petitioned the Douglas County District Court for postconviction relief on the basis that he had received ineffective assistance of counsel. The district court denied his petition, and Cook appeals.

## SCOPE OF REVIEW

In an evidentiary hearing at a bench trial provided by Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1995) for postconviction

relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and weight to be given to a witness' testimony. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995).

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly wrong. *State v. Ditter*, 255 Neb. 696, 587 N.W.2d 73 (1998).

## FACTS

The facts of this case are set forth in more detail in *State v. Cook*, 244 Neb. 751, 509 N.W.2d 200 (1993), in which this court affirmed Cook's convictions of first degree murder and use of a firearm to commit a felony. Thus, we set forth only those facts which are necessary for our opinion.

On February 29, 1992, Nebraska Morrow (Morrow) was working at M & G Enterprises, a package liquor and general store in Omaha. At approximately 8 or 8:30 p.m., Cook arrived at the store and began talking to Morrow. When Cook attempted to raise the countertop to go behind it, another employee, Bolden Hooper, saw Morrow hit Cook once on the head with a wooden stick. Cook fell to the ground and was bleeding from the head.

After Cook got up, he repeatedly asked Morrow to come out from behind the counter to fight him. Cook then walked out the door, came back in, and said, "Nebraska, you're dead," three times before leaving the store. Morrow called his brother, Napoleon Morrow, after the incident and told him that he had hit a man named "Cooks." Napoleon Morrow identified Cook as the man known as Cooks.

At approximately midnight, Kiesha Jackman, Tiffany Pogue, Tyrone Watson, and three other persons arrived at the store to buy beer. Jackman testified that she was driving her mother's car and that she backed into the parking lot. Pogue stated that some members of the group went into the store while others waited in the car. While Pogue was in the car, she saw a man walking "catty-corner across the parking lot." Jackman told Pogue that the man had a gun, and Pogue saw a gun by the side of the man's leg. Pogue identified the man as Cook. She testified that Cook was alone, and she saw him walk up to the front door of the

store, stop for 20 or 30 seconds to look around, and then walk inside. About 1½ to 2 minutes later, she heard a shot, and she saw two women run out of the store. She then observed Cook, still carrying the gun, walk out of the store and back across the parking lot. She said that his eyes were "glazed over a little bit" and that he had what looked like a sore on his head.

Four other witnesses testified to seeing Cook enter the store and shoot Morrow, who died as a result of the shotgun blast. The murder weapon was not recovered, but a search of Cook's residence the morning after the shooting produced a spent .410 shotgun shell. Cook was convicted of first degree murder and use of a firearm to commit a felony, and he was sentenced to life in prison for the murder conviction and 10 years' imprisonment for the firearm conviction. His convictions and sentences were affirmed on appeal.

In his motion for postconviction relief, Cook claims that his trial counsel was ineffective because, even though there was clear evidence that Cook was an alcoholic and that he had been drinking large quantities of alcohol throughout the day and evening of the murder, his trial counsel did not investigate any of the circumstances concerning his alcoholism. The petition alleges that there was evidence which showed that Cook was taking medication which would have adverse effects on Cook when consumed with alcohol. Cook alleges that his trial counsel did not sufficiently explore the benefits of presenting evidence regarding these prescribed drugs and the effect they would have had upon him.

Cook further alleges that his trial counsel failed to conduct any investigation whatsoever as to whether he suffered from severe trauma as a result of being struck in the head with a wooden stick prior to the murder. Cook claims that had his trial counsel not been ineffective, the result of the proceeding would have been different.

At the hearing on the motion for postconviction relief, trial counsel admitted that the strategy he pursued in the investigation was the defense of diminished capacity to form the necessary intent of premeditated first degree murder due to the effects of having suffered a blow to the head prior to the shooting and

due to the fact that Cook was intoxicated at the time of the shooting.

The postconviction record shows that evidence of Cook's injury and intoxication was admitted at trial. Charles Bailey testified that he and Cook had consumed beer and liquor on the day of the murder and that the men had started drinking at 2 p.m. and then purchased more beer at 6:30 p.m. Bailey stated that the two men met up with friends and continued drinking together until approximately 7:30 or 8 p.m., when he left to go home. Cook entered the liquor store at approximately 8 or 8:30 p.m.

Napoleon Morrow, Morrow's brother, testified at trial that Morrow had told him that Morrow hit Cook with a stick. Hooper also testified that Cook had been hit with a stick and that Cook fell as a result of the blow and was bleeding from the head when he left the store.

At the hearing on the motion for postconviction relief, Cook's trial counsel acknowledged that he did not call all the witnesses he could have and that he did not elicit all the relevant testimony from the one witness he did call. Trial counsel testified he called Bailey to testify that Bailey and Cook were drinking beer on the day of the murder, but Bailey was not asked any questions regarding the specific quantity of alcohol consumed. In addition, he was not questioned about Cook's demeanor or appearance.

A police officer testified at the postconviction hearing that he had noted in his report that Cook emitted a strong odor of alcohol the morning after the shooting. This evidence, however, was not elicited at trial. Other police reports contained witness accounts which indicated that Cook seemed drunk about the time of the shooting. This testimony was also not presented at trial.

In denying Cook's motion for postconviction relief, the district court stated:

> The record reflects that Defendant and his trial counsel . . . met several times prior to trial to discuss trial strategy. Witnesses testified at the 7-27-98 hearing that were either not called to testify at trial or failed to respond to a subpoena to testify at trial. The Court finds that the testimony of these individuals would not likely have changed the outcome at trial.

Defendant further claims that trial counsel was ineffective in that he did not pursue the defense of intoxication. . . . [T]he Court finds that trial counsel did attempt to pursue the intoxication defense by having Dr. Bruce Gutnik interview the Defendant. . . . Unfortunately for the Defendant, it was Dr. Gutnik's opinion that the intoxication defense was not a viable defense.

Trial counsel is not required to exhaust the field of experts until he is able to find one that is willing to testify as the Defendant would want him to. The fact that Defendant <u>now</u> has an expert that opines that the Defendant could not have formed intent or weighed the consequences of his actions does not mean that the Defendant's trial counsel did not subject the prosecution's case to a meaningful adversarial testing. . . .

The Court, therefore, finds that given the weight of the evidence which the State had against the Defendant and the fact that Dr. Gutnik's opinion would not have been useful to the Defendant's defense of intoxication, it cannot be said that trial counsel's decision <u>not</u> to call Dr. Gutnik and Defendant's wife as witnesses at his trial prejudiced him . . . .

Subsequently, Cook timely filed a notice of appeal. Pursuant to our power to regulate the caseload of the appellate courts of this state, we moved this case to our docket.

## ASSIGNMENT OF ERROR

In summary, Cook argues that the district court erred in not granting him postconviction relief because his trial counsel was ineffective.

## ANALYSIS

■ In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. See, *State v. Ditter*, 255 Neb. 696, 587 N.W.2d 73 (1998); *State v. Williams*, 253 Neb. 111, 568 N.W.2d 246 (1997). A criminal

defendant seeking postconviction relief has the burden of establishing the basis for such relief. *State v. Ditter, supra.*

■ In order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Hunt,* 254 Neb. 865, 580 N.W.2d 110 (1998), relying on *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The first prong of the *Strickland* test is satisfied if the defendant shows that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Ditter, supra.* The second prong is satisfied if the defendant shows how he was prejudiced in the defense of his case as the result of the attorney's actions. See *State v. Rehbein,* 235 Neb. 536, 455 N.W.2d 821 (1990). To prove prejudice, the defendant must demonstrate by a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *State v. Nielsen,* 243 Neb. 202, 498 N.W.2d 527 (1993).

We begin by addressing the first prong of the *Strickland* test. Cook argues that trial counsel was ineffective in not pursuing the defense of intoxication. Cook claims that because his trial counsel did not call Dr. Bruce Gutnik to testify regarding Cook's alcoholism or call Cook's wife to testify regarding the medication which he was taking on the day of the murder, counsel was ineffective. In denying Cook's motion for postconviction relief, the district court found that trial counsel's decision not to call Dr. Gutnik and not to call Cook's wife could not have prejudiced Cook's defense. We agree with the district court's conclusion, but also conclude that trial counsel was not ineffective.

Cook argues that his counsel should have called an expert to testify regarding his alcoholism. We addressed a similar claim in *State v. Nielsen, supra,* in which the defendant argued that his trial counsel should have called an expert to testify regarding the

effects of his alcoholism. In *Nielsen*, the witness was not called, but the attorney, instead, elected to elicit evidence of the defendant's intoxication by cross-examining the State's expert witness. We held that the defense attorney's strategy to call, or not to call, a particular witness will not, without more, sustain a finding of ineffectiveness of counsel. We stated that the court will not second-guess the reasonable strategic decisions made by defense counsel.

Here, Cook's attorney decided not to call Dr. Gutnik because he had opined that Cook was not sufficiently intoxicated at the time of the murder so as to negate intent. Therefore, Dr. Gutnik's statement would not have helped Cook's defense, and thus, trial counsel had reasonable grounds for not calling Dr. Gutnik as a witness.

Cook suggests that trial counsel should have found an expert who would have testified that he was sufficiently intoxicated so as not to be able to formulate an intent to commit first degree murder. We agree with the district court's determination that trial counsel is not required to "shop" for an expert who will testify as the defendant wants him to. Once Dr. Gutnik opined that Cook was able to formulate intent, trial counsel had no reasonable basis to conclude that another expert would opine differently. Therefore, trial counsel was not deficient in failing to call this expert or any other expert on this issue.

Cook also alleges that trial counsel was ineffective for not calling Cook's wife to testify regarding the medication he was taking on the day of the murder. The district court concluded that counsel was justified in not calling Cook's wife, and we agree. Trial counsel explained at the evidentiary hearing that he was afraid that if the wife was called, the State would bring out the fact that Cook told his wife he had killed someone when he returned home after the shooting. This testimony would undermine Cook's claim that he did not remember anything about the murder. A strategic decision to call, or not to call, a particular witness will not, without more, sustain a finding of ineffectiveness. *State v. Nielsen, supra.*

Cook also asserts that trial counsel was ineffective for not calling Enice Prince, Jr., to testify. Prince allegedly could have testified regarding Cook's drunkenness at the time of the mur-

der. At the hearing on the motion for postconviction relief, Prince claimed that if he had been called to testify at the murder trial, he would have informed the jury that he had spoken with Cook after the murder. Prince claims that he ran into Cook at an "after-hours" party on the night of the murder between midnight and 1 a.m. and that Cook greeted Prince as if it was the first time the men had seen each other all day even though they had been drinking together earlier in the night. Prince said that he also overheard conversations between Cook and Bailey in which it appeared that Cook did not remember shooting anyone. Prince was not certain, but he thought that Bailey informed Cook of the murder at that time. Cook claims that had this testimony been presented to the jury, it might have lent credibility to his claim that he was in an alcohol-induced blackout at the time of the murder.

At the postconviction hearing, trial counsel acknowledged that Cook had given him Prince's name as a possible witness. Trial counsel claimed, however, that his attempts to contact Prince had been unsuccessful. Trial counsel did not interview Prince regarding the after-hours party and did not know what testimony Prince would have given. The State also subpoenaed Prince, but he did not appear at trial. However, trial counsel did have an opportunity to meet and interview Bailey regarding the events of the night, and at no time during the interview did Bailey inform counsel that Cook did not remember committing the murder or that Bailey was the one who informed Cook of what he had done. In other words, Bailey, who did testify at trial, provided no testimony on the matters alleged by Prince. In any effectiveness of counsel case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *State v. Escamilla*, 245 Neb. 13, 511 N.W.2d 58 (1994). In light of the fact that neither Bailey nor apparently Cook informed trial counsel of the alleged content of Prince's testimony, we conclude that trial counsel was not ineffective for failing to find and interview Prince regarding the after-hours party.

Moreover, Cook has not been prejudiced by trial counsel's failure to call the above witnesses or to investigate further into

his intoxication defense. Ordinarily, voluntary intoxication does not justify or excuse a crime unless an accused is intoxicated to an extent or degree that the accused is incapable of forming the intent required as an element of the crime charged. *State v. Lixey*, 238 Neb. 540, 471 N.W.2d 444 (1991).

After reviewing the entire record from Cook's trial and all the evidence submitted at the hearing on the motion for postconviction relief, we conclude that the district court was not clearly wrong in determining that Cook had not sustained his burden of showing that the result would otherwise have been different had trial counsel called different witnesses. Even if all the evidence about which Cook complains had been presented to the jury, it would not have proved intoxication of a sufficient severity to negate his intent to commit murder. Several witnesses testified at trial that Cook was acting coherently at the time of the murder. Cook was coherent enough to say to the victim, "Nebraska, you're dead," obtain a gun, walk back into the store, and shoot the victim in the chest with a shotgun at close range.

Cook has failed to prove that his trial counsel's performance was deficient and has failed to prove that he was prejudiced in any manner by the actions of trial counsel. The district court's denial of postconviction relief was not clearly wrong, and we therefore affirm the judgment of the district court.

AFFIRMED.