STATE OF NEBRASKA, APPELLEE, V.
BENNIE L. UTTER, APPELLANT.

641 N.W.2d 624

Filed April 5, 2002.   No. S-01-677.

Thomas C. Riley, Douglas County Public Defender, and Timothy F. Shanahan for appellant.

Don Stenberg, Attorney General, and George R. Love for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## I. NATURE OF CASE
Bennie L. Utter was convicted by a jury in the district court for Douglas County of two counts of possession of a controlled substance with intent to deliver and one count of failure to affix a tax stamp. Utter appeals his convictions on the basis that the evidence introduced at trial was insufficient to establish that he had an intent to deliver or that he was a "dealer" subject to the marijuana and controlled substances tax statutes. We affirm Utter's convictions for possession with intent to deliver but, due to insufficient evidence, reverse his conviction and sentence for failure to affix a tax stamp.

## II. STATEMENT OF FACTS
On November 26, 1999, an Omaha police officer stopped a pickup truck because a person, later identified as Utter, was occupying the open pickup box. After the pickup stopped, Utter jumped out of the box and was reaching toward his waistband. The officer ordered Utter to place his hands on the side of the pickup and asked Utter if he could search him. Utter consented to the search. During the search, the officer found two plastic bags containing white substances. Neither bag bore a tax stamp.

Utter was charged with two counts of possession of a controlled substance with intent to deliver in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2000) and one count of failure to affix a tax stamp in violation of Neb. Rev. Stat. § 77-4309 (Reissue 1996). Trial was held March 13 and 14, 2001. A forensic chemist testified that the contents of one bag were found to be

a mixture of methamphetamine and dimethylsulfone (DMS) and that the contents of the other bag were found to be a mixture of cocaine and mannitol, a cutting agent "used to make the bulk larger." A forensics report was entered into evidence which indicated that the methamphetamine/DMS mixture weighed 3.45 grams and that the cocaine/mannitol mixture weighed 7.05 grams. The chemist was unable to testify regarding what weight of the methamphetamine/DMS mixture was attributable to methamphetamine or what weight of the cocaine/mannitol mixture was attributable to cocaine.

Also at trial, an officer qualified as an expert in narcotics activity testified that in his opinion, based on the combination of the two drugs and the amount of each drug, the quantity of methamphetamine and cocaine confiscated from Utter constituted a "distribution amount."

Utter testified in his own defense. Utter stated that he had purchased the methamphetamine and cocaine for his own use and had been in possession of the drugs for only about 15 minutes prior to the search. Utter testified that prior to his arrest, he had a drug habit and regularly used both methamphetamine and cocaine. He testified that in 1999, he would typically use 3.5 grams of methamphetamine and/or 7 grams of cocaine in 1 week.

Utter also called a state probation officer who had been assigned to Utter in 1994 and 1995 as a witness. The probation officer testified that during the time he had been assigned to Utter, the officer had tested Utter for drug use approximately eight times and that five of the eight tests came back positive for cocaine use, but that Utter had not been tested for methamphetamine.

When instructing the jury on the counts involving possession with intent to deliver, the district court instructed on the lesser-included offense of simple possession. The jury found Utter guilty on both counts of possession with intent to deliver and on the count of failure to affix a tax stamp. On May 15, 2001, the district court sentenced Utter to 3 years of intensive supervised probation on each conviction and ordered the sentences to be served concurrently.

### III. ASSIGNMENT OF ERROR

Utter asserts that the evidence introduced at trial was insufficient as a matter of law to sustain convictions for two counts of

 

possession of a controlled substance with intent to deliver and one count of failure to affix a tax stamp.

## IV. STANDARDS OF REVIEW

■ Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Castor,* 262 Neb. 423, 632 N.W.2d 298 (2001).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *First Data Corp. v. State, ante* p. 344, 639 N.W.2d 898 (2002).

## V. ANALYSIS

Utter contends that the evidence introduced at trial was insufficient as a matter of law to sustain his convictions for possession of a controlled substance with intent to deliver and for failure to affix a tax stamp. Because the elements of the crimes of possession with intent to deliver and failure to affix a tax stamp differ, we first consider the evidence with regard to the convictions separately.

### 1. POSSESSION WITH INTENT TO DELIVER

The basis of Utter's argument regarding insufficient evidence with respect to the possession with intent to deliver charges is that the State put on no evidence of an intent to deliver other than the narcotics officer's testimony that the quantity of methamphetamine and cocaine found on Utter at the time of his arrest constituted a "distribution amount." Utter asserts that such evidence was contradicted by his own testimony regarding his drug habit and his testimony that he personally intended to use the drugs. We conclude that the evidence presented by the State was sufficient to convict Utter of two counts of possession with intent to deliver.

■ In reviewing a conviction for sufficiency of the evidence, we must view the evidence in the light most favorable to the State. *Castor, supra.* Circumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Flores,* 245 Neb. 179, 512 N.W.2d 128 (1994), *disapproved on other grounds, State v. Johnson,* 256 Neb. 133, 589 N.W.2d 108 (1999). Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *State v. Konfrst,* 251 Neb. 214, 556 N.W.2d 250 (1996).

Section 28-416 makes it a crime to possess a controlled substance with the intent to deliver. Section 28-416 does not specify a quantity of controlled substance which must be possessed in order to establish intent to deliver. In the present case, the State put on evidence of the quantity of substances possessed by Utter, and the narcotics officer, whose testimony established his experience and knowledge in the field of narcotics transactions, testified that the amount and combination of drugs possessed by Utter were considered a "distribution amount." Evidence of the quantity of a substance possessed combined with expert testimony that such quantity indicates an intent to deliver can be sufficient for a jury to infer an intent to deliver. See *State v. Thomas,* 240 Neb. 545, 483 N.W.2d 527 (1992).

Utter emphasizes that he testified in his own defense that he did not intend to distribute the drugs but instead possessed the drugs for his own use. In this regard, we note that the trial court instructed the jury on simple possession as a lesser-included offense of possession with intent to deliver. The jury apparently discredited Utter's testimony and gave more weight to the testimony of the narcotics officer. On appeal, this court does not pass on the credibility of witnesses or reweigh the evidence because such matters are for the finder of fact. *State v. Castor,* 262 Neb. 423, 632 N.W.2d 298 (2001). Although there was contradictory evidence regarding Utter's intent, the evidence put on by the State was sufficient for the jury to find an intent to deliver and

to convict Utter on both counts of possession of a controlled substance with intent to deliver.

## 2. FAILURE TO AFFIX TAX STAMP

### (a) Utter's Claim of Insufficient Evidence

Utter claims that the evidence was insufficient to convict him of the count of failure to affix a tax stamp. The basis of Utter's argument is generally that the State failed to prove under the controlling statutes that he was a "dealer" who distributed or possessed "seven or more grams of any controlled substance" and that, therefore, the evidence failed to establish that Utter was subject to the marijuana and controlled substances tax statutes, Neb. Rev. Stat. §§ 77-4301 to 77-4316 (Reissue 1996). Utter asserts specifically that the State's evidence was insufficient because, although there was evidence that he possessed 3.45 grams of a methamphetamine/DMS mixture and 7.05 grams of a cocaine/mannitol mixture, the State did not establish, as it was required to do under the statutes, how much pure methamphetamine or how much pure cocaine Utter possessed. Whereas § 28-416 pertaining to possession with intent to deliver does not specify a quantity of controlled substance which must be possessed in order to establish an intent to deliver, the marijuana and controlled substances tax statutes do specify a quantity which must be possessed before one is considered a "dealer" and therefore required to pay the tax and affix the stamp.

### (b) Controlling Statutes

Utter was charged under § 77-4309, which provides in relevant part, "A dealer distributing or possessing marijuana or a controlled substance without affixing the official stamp, label, or other indicium shall be guilty of a Class IV felony." Section 77-4301(2) defines "dealer" as

a person who, in violation of Nebraska law, manufactures, produces, ships, transports, or imports into Nebraska or in any manner acquires or possesses six or more ounces of marijuana, *seven or more grams of any controlled substance which is sold by weight*, or ten or more dosage units of any controlled substance which is not sold by weight.

(Emphasis supplied.) Thus, in order to be considered a "dealer" under the tax stamp statutes, Utter would have to have been found to possess "seven or more grams of any controlled substance which is sold by weight."

The definition of "controlled substance" for purposes of §§ 77-4301(2) and 77-4309 is found at § 77-4301(1), which provides, "Controlled substance shall mean any drug or substance, including an imitation controlled substance, that is held, possessed, transported, transferred, sold, or offered to be sold in violation of Nebraska law. Controlled substance shall not include marijuana." The definition of "controlled substance" found in § 77-4301(1) includes drugs or substances possessed "in violation of Nebraska law." The statutes which delineate the drugs or substances possession of which is "in violation of Nebraska law" are found in chapter 28 of the Nebraska Revised Statutes.

Section 28-416(1) provides in relevant part that "it shall be unlawful for any person knowingly or intentionally [t]o . . . possess with intent to manufacture, distribute, deliver, or dispense a controlled substance." For purposes of § 28-416(1), "controlled substance" is defined in Neb. Rev. Stat. § 28-401(4) (Cum. Supp. 2000), which provides in relevant part, "Controlled substance shall mean a drug, biological, substance, or immediate precursor in Schedules I to V of section 28-405." Neb. Rev. Stat. § 28-405 (Supp. 1999) contains Schedules I to V. Schedule II of § 28-405 contains both subsection (a)(4) which lists "cocaine" and subsection (c) which lists a "mixture . . . which contains . . . methamphetamine." Thus, Schedule II includes "cocaine" without reference to a mixture, § 28-405(a)(4), and a "mixture . . . which contains . . . methamphetamine," § 28-405(c). Neither DMS nor mannitol is listed in Schedules I to V of § 28-405.

Construing the controlling statutes together as they relate to a case involving cocaine and methamphetamine, we conclude that the 7 or more grams of controlled substance which would make one a "dealer" under § 77-4301(2), and therefore subject to conviction under § 77-4309, must be composed of (1) 7 or more grams of cocaine in isolation, or (2) 7 or more grams of a mixture which contains methamphetamine, or (3) 7 or more grams combined of cocaine in isolation and a mixture which contains methamphetamine.

### (c) Positions of Parties

Utter argues that the State did not provide evidence that he possessed 7 or more grams of any controlled substance, as "controlled substance" is used in the relevant statutes. A chemist testified that the substances possessed by Utter were cocaine mixed with mannitol and methamphetamine mixed with DMS. The forensic report showed that the weight of the cocaine/mannitol mixture was 7.05 grams and the weight of the methamphetamine/DMS mixture was 3.45 grams. The chemist testified that she did not separate the cocaine from the mannitol or the methamphetamine from the DMS, and she rendered no estimate or opinion as to how much of the weight of each mixture was attributable to each of the components. Utter claims that because the State did not provide evidence of the weight of the pure cocaine or the pure methamphetamine, there was not sufficient evidence that he possessed 7 or more grams of "any controlled substance," § 77-4301(2), and that the evidence therefore did not establish that he was a "dealer" under the marijuana and controlled substances tax statutes, *id.*

The State argues in its brief that the "purity" of a controlled substance is not relevant to a determination of the quantity of the controlled substance involved for Nebraska tax stamp purposes. The State relies on *U.S. v. Bishop*, 894 F.2d 981 (8th Cir. 1990). The holding in *Bishop* was based on a federal drug sentencing statute which provided an enhanced penalty based on the quantity of substance involved in the offense. The court in *Bishop* quotes the relevant statute specifically referring to quantities " 'of a mixture or substance containing a detectable amount of' " certain controlled substances. 894 F.2d at 984. See, also, 21 U.S.C. § 841(b)(1)(A) (2000). The Court of Appeals for the Eighth Circuit concluded that based on 21 U.S.C. § 841, the quantity forming the basis for imposition of the enhanced penalty could be the quantity of a controlled substance mixed with another substance. The court in *Bishop* distinguished its prior decision in *U.S. v. McGeehan*, 824 F.2d 677 (8th Cir. 1987), which had interpreted a prior version of the federal statute that did not contain the "mixture" language and had stated that only the weight of the controlled substance, not the combined weight of the "mixture," could be considered. Because *Bishop* is based

on a federal statute with language which differs from the Nebraska statutes, it is distinguishable.

Although based on somewhat different reasoning, we find merit in Utter's argument summarized above.

### (d) Resolution

The definition of "dealer" in § 77-4301(2) refers to "any controlled substance." Section 77-4301(1) defines "controlled substance" for purposes of the marijuana and controlled substances tax as "any drug or substance, including an imitation controlled substance, that is held, possessed, transported, transferred, sold, or offered to be sold in violation of Nebraska law." By reference to §§ 48-416(1), 28-401(4), and 28-405, quoted *supra*, it is clear that the "controlled substance[s]" in this case, for purposes of the tax stamp statute, are found in Schedule II.

Section 28-405, Schedule II, includes

> (a) Any of the following substances . . . .
>
> . . . .
>
> (4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, including cocaine and its salts, optical isomers, and salts of optical isomers, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or ecgonine[.]

Schedule II further lists "(c) Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system: . . . (3) methamphetamine, its salts, isomers, and salts of its isomers . . . ." Neither DMS nor mannitol is listed in Schedules I to V of § 28-405. In sum, Schedule II of § 28-405 defines "controlled substance" to include, inter alia, "cocaine" and a "mixture . . . which contains . . . methamphetamine."

The Schedule II listing includes cocaine in isolation and a mixture containing methamphetamine, but it does not include a mixture containing cocaine. Compare, 21 U.S.C. § 841 applied in *U.S. v. Bishop*, 894 F.2d 981, 984 (8th Cir. 1990) (referring to

quantities " 'of a mixture or substance containing a detectable amount of' " certain controlled substances), and *People v. Esquivel-Alaniz*, 985 P.2d 22, 24 (Colo. App. 1999) (holding evidence sufficient to support conviction for possession and sale of cocaine in amount greater than 25 grams, even though pure cocaine in mixture was less than 25 grams, because Colorado statute defined "cocaine" to include " 'any compound, mixture, or preparation which contains any quantity of' " cocaine (emphasis omitted)).

We are aware that § 28-416(7), which grades drug offenses involving cocaine based on the quantity involved, provides as follows:

Any person who violates subsection (1) of this section with respect to cocaine *or any mixture or substance containing a detectable amount of cocaine* in a quantity of:

(a) One hundred forty grams or more shall be guilty of a Class IB felony;

(b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a Class IC felony; or

(c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

(Emphasis supplied.) We find it significant that in grading drug offenses according to quantity, the Legislature specified "cocaine or any mixture or substance containing a detectable amount of cocaine." However, in contrast, § 77-4301(2) refers only to "any controlled substance" as defined in Schedule II and not to "any mixture containing a controlled substance." Penal statutes are to be strictly construed, and we are not at will to read "mixture" into the controlling statute where that concept has not been expressed by the Legislature. *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001) (it is not for courts to supply missing words or sentences to statute).

Utter was convicted under § 77-4309 of being a "dealer distributing or possessing . . . a controlled substance without affixing the official stamp, label, or other indicium." Section 77-4301(2), which defines "dealer," requires involvement of 7 grams or more of a controlled substance. We are obliged to construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. *In re Estate of Eickmeyer*, 262

Neb. 17, 628 N.W.2d 246 (2001). Schedule II is applicable to the tax stamp statute and identifies a mixture containing methamphetamine and cocaine in isolation as controlled substances, but does not include a mixture containing cocaine as a controlled substance. For purposes of the marijuana and controlled substances tax statutes, 7 or more grams of a "controlled substance" must be involved in order to be a "dealer" subject to the tax. Thus, a sufficient quantity of cocaine in isolation and/or a mixture containing methamphetamine could be the basis of a finding of 7 or more grams for "dealer" purposes; however, the entire weight of a quantity identified only as "a mixture containing cocaine" could not be considered a controlled substance when assessing whether 7 or more grams are involved.

In the present case, the evidence established that Utter possessed 3.45 grams of a methamphetamine/DMS mixture, which mixture is a controlled substance for purposes of § 77-4309. However, although the evidence established that Utter possessed 7.05 grams of a cocaine/mannitol mixture, a mixture containing cocaine is not a controlled substance for purposes of § 77-4309, and the evidence did not establish how much cocaine in isolation Utter possessed. For the sake of completeness, we note that § 77-4303(2) provides that for purposes of the marijuana and controlled substances tax, the weight of a controlled substance in the dealer's possession "shall be the actual weight, if known, or *the estimated weight* as determined by the Nebraska State Patrol or other law enforcement agency. Such determination shall be presumed to be the weight of such . . . controlled substances for purposes of sections 77-4301 to 77-4316." (Emphasis supplied.) The chemist in the instant case testified that the weight of the cocaine/mannitol mixture was 7.05 grams, but made no estimate under § 77-4303(2) as to what weight of the mixture was attributable to cocaine in isolation.

In order to establish that Utter was a "dealer" under § 77-4301(2), and therefore subject to conviction under § 77-4309, the State needed to prove that he possessed "seven or more grams of any controlled substance" listed in § 28-405. The charges against Utter involved cocaine and methamphetamine, and therefore the State needed to prove that he possessed (1) 7 or more grams of cocaine in isolation, or (2) 7 or more grams of a

mixture containing methamphetamine, or (3) 7 or more grams combined of cocaine in isolation and a mixture which contains methamphetamine. The State provided evidence that Utter possessed 3.45 grams of the methamphetamine mixture, a controlled substance for tax stamp purposes. However, the State failed to provide evidence of the amount of cocaine in isolation. Thus, although the 3.45 grams of the methamphetamine mixture was properly considered by the jury, the State failed as a matter of law to put on evidence regarding pure cocaine or an estimated weight of cocaine alone, and therefore, the jury could not properly consider the cocaine mixture in its evaluation of whether Utter possessed "seven or more grams of any controlled substance" for tax stamp purposes. Therefore, there was insufficient evidence as a matter of law from which the jury could find that Utter was a dealer for tax stamp purposes, and his conviction must be reversed.

## VI. CONCLUSION

We conclude that the evidence in this case was sufficient for the jury to find an intent to deliver and to convict Utter of two counts of possession of a controlled substance with intent to deliver and affirm these convictions. We conclude, however, that the evidence was not sufficient for the jury to find that Utter was a "dealer" under the definition in § 77-4301(2) and to convict him of a failure to affix a tax stamp in violation of § 77-4309. Thus, we affirm Utter's convictions on two counts of possession of a controlled substance with intent to deliver, and reverse his conviction and sentence for failure to affix a tax stamp and remand the cause with directions to dismiss the count of failure to affix a tax stamp.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.