STATE OF NEBRASKA, APPELLEE, V. TATANKA SAPANAJIN,
ALSO KNOWN AS JESSE T. ROUSE, APPELLANT.
646 N.W.2d 668

Filed June 4, 2002.   No. A-01-902.

Amie C. Martinez and Jonathan M. Braaten, of Anderson, Creager & Wittstruck, P.C., for appellant.

Don Stenberg, Attorney General, and George R. Love for appellee.

Sievers, Carlson, and Moore, Judges.

Carlson, Judge.

## INTRODUCTION

Tatanka SapaNajin appeals after a jury trial in the district court for Lancaster County. After trial, the jury found SapaNajin guilty of possession of methamphetamine. The trial court found SapaNajin to be a habitual criminal and sentenced him to 10 years in prison. For the reasons set forth below, we affirm.

## BACKGROUND

In an information filed September 20, 1996, the State charged SapaNajin with possession of a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1995) and alleged that SapaNajin was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1995).

Trial was held in April 1999. At trial, SapaNajin chose to represent himself up until closing arguments, when SapaNajin requested that the public defender represent him. During his opening statement, SapaNajin acknowledged that the officers found a controlled substance, methamphetamine, in his coat on October 24, 1995. SapaNajin argued that the coat he was wearing was not his, but had been borrowed from a friend. SapaNajin also stated that none of the officers asked him if the coat or the drugs inside the coat were his.

Officer Jeffrey Van Nortwick of the Lincoln Police Department testified that on October 24, 1995, he was working the second shift, from 3:30 to 11:30 p.m. Nortwick testified that he came into contact with SapaNajin on October 24 after being dispatched to a vandalism in progress. Nortwick testified that he and three other officers arrested SapaNajin that evening. Nortwick testified that after the arrest, a search of SapaNajin revealed a shot glass in the inside pocket of his coat, which shot glass later tested positive for methamphetamine. At trial, the prosecutor asked Nortwick if he recalled SapaNajin stating, " '[t]hat's not my shot glass, I don't know where that came from,' " or anything to that effect. SapaNajin objected, stating that the State was trying to draw conclusions as to his silence. The State argued that it could ask those questions because SapaNajin opened the door in his opening statement. The trial court sustained SapaNajin's objection and stated:

> Opening statement is not evidence. I see this as a peremptory strike. We have to wait [to see] if Mr. Sapa[N]ajin is going to testify, then he can testify, then you can ask him on cross-examination and if he says something different, you can call your officer back again.

Besides the shot glass, the officers found two syringes, extra needles, and some alcohol wipes in the left outer front pocket of SapaNajin's coat. The officers also found a marijuana pipe

with marijuana residue and two small marijuana joints on SapaNajin's person.

Officer Kevin Hinton transported SapaNajin to jail. At the jail, Officers Joseph Anderson and Kim Sneddeker conducted a search of SapaNajin. Anderson testified that SapaNajin was resistant and that it was Anderson's belief that SapaNajin was highly intoxicated. Anderson testified that while the officers were searching SapaNajin, they found a pack of cigarettes and a small folded piece of paper in the cigarette package. Anderson testified that upon opening the paper, the officers found a white powdery substance. The record shows that one of the paper packets found in the cigarette pack subsequently tested positive for methamphetamine. Sneddeker testified that she retrieved the above items out of the left front pocket of either SapaNajin's shirt or his coat.

At trial, SapaNajin testified in his own defense. SapaNajin testified that on October 24, 1995, he was in a bar with some friends. SapaNajin testified that he was at the bar longer than he anticipated and that as it got toward evening, he realized that he should move his car if he was going to stay any longer. SapaNajin testified that when he left the bar, it was chilly out so he grabbed the coat of his friend Richard Maher. SapaNajin testified that he remembers Maher telling him, " 'Don't lose my shot glass.' " Maher testified at trial, corroborating SapaNajin's story and stating that the coat and the items inside were Maher's.

SapaNajin testified that when he left the bar, he had a "good buzz" going. SapaNajin testified that before he had walked three or four blocks, he got arrested. SapaNajin testified that he generally smokes pot in a pipe and that the pipe found on him was his. SapaNajin testified that he does not use methamphetamine and that the items found on him containing methamphetamine were found in Maher's coat and belonged to Maher, not him. Regarding any statements SapaNajin may have given to the police after his arrest, but before any *Miranda* warnings were given, he stated:

> I remember people once asking me if I had anything to say. I think it was Officer Van Nortwick, but, you know, what have I got to say? No, he said, you got drugs on you,

you know, nobody said that. They said, have you got any-
thing to say?

I remember them being more excited about a knife in my
pocket than anything else. I get down to the jail, nobody
waves something in front of me saying, uh-oh, look what
we found? You got anything to say? Nobody did that, so I
didn't say anything.

In the prosecutor's closing argument, he commented on
SapaNajin's testimony as follows:

Well, now, what if they pulled that off of my jacket and
when they were doing so I said, geez, I don't know whose
that is. This isn't my jacket. When I'm being booked into
jail and having items pulled off of this jean jacket and just
say, this isn't mine. Make sure you keep straight what
you're taking out of which place because this isn't mine.
This is somebody else's that I just borrowed right before I
got arrested. But he doesn't.

After trial, the jury found SapaNajin guilty of one count of
possession of methamphetamine. On April 29, 1999, SapaNajin
filed a motion for new trial, which the district court denied on
August 16. On August 23, the trial court sentenced SapaNajin to
10 years in prison. On September 23, SapaNajin appealed. On
December 23, this court dismissed SapaNajin's notice of appeal
for lack of jurisdiction. See *State v. Sapanajin*, 8 Neb. App. lxvii
(No. A-99-1122, Dec. 23, 1999).

On January 3, 2000, SapaNajin filed a motion for rehearing,
which this court overruled on April 5. On June 28, 2001,
SapaNajin filed a motion for hearing on a petition for postcon-
viction relief, seeking reinstatement of his direct appeal. On
July 25, the trial court granted SapaNajin's request for post-
conviction relief and reinstated SapaNajin's direct appeal.
SapaNajin appeals.

## ASSIGNMENTS OF ERROR

On appeal, SapaNajin argues that (1) the trial court abused its
discretion in overruling his motion for a new trial based on pros-
ecutorial misconduct during closing arguments, (2) the trial court
erred in refusing to give a jury instruction on the defense of
intoxication, (3) the evidence at trial was insufficient to convict

him of the charge of possession of methamphetamine, and (4) he was denied effective assistance of counsel at the trial level in violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution.

## ANALYSIS

*Prosecutorial Misconduct.*

On appeal, SapaNajin argues that the trial court abused it discretion in overruling his motion for new trial based on prosecutorial misconduct during closing arguments. SapaNajin points to the following remarks made by the State in closing arguments:

> Well, now, what if they pulled that off of my jacket and when they were doing so I said, geez, I don't know whose that is. This isn't my jacket. When I'm being booked into jail and having items pulled off of this jean jacket and just say, this isn't mine. Make sure you keep straight what you're taking out of which place because this isn't mine. This is somebody else's that I just borrowed right before I got arrested. But he doesn't.

SapaNajin argues that the State committed prosecutorial misconduct by suggesting to the jury that they were allowed to infer SapaNajin's ownership of the coat and its contents based on SapaNajin's silence at the time of his arrest.

An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court. *State v. Thompson*, 246 Neb. 752, 523 N.W.2d 246 (1994). A trial court abuses its discretion when its rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result. *Id.*

Initially, we note that SapaNajin did not request a mistrial or move to have the court admonish the jury when the prosecutor made these remarks. A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).

Even so, we conclude that the prosecutor's remarks in closing argument did not constitute prosecutorial misconduct. In *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976),

the U.S. Supreme Court held that it is fundamentally unfair and a violation of due process to allow the silence of an arrested person to be used to impeach that person.

In *Fletcher v. Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982), the Supreme Court limited this rule to post-arrest, post-*Miranda* silence. Specifically, the Supreme Court held that a prosecutor's remarks referring to postarrest, pre-*Miranda* silence do not necessarily violate a defendant's due process rights. The Court stated that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." 455 U.S. at 607.

In its order denying SapaNajin's motion for new trial based on prosecutorial misconduct, the trial court stated:

> A review of the court's trial notes reveals there was no testimony concerning the defendant ever being advised of the *Miranda* rights or being given similar affirmative assurances. That being the case, all questioning of the defendant . . . relating to his not revealing certain information to law enforcement was questioning relating to pre-*Miranda* silence and was, therefore, properly used to impeach the defendant.

After reviewing the record, we conclude that the trial court did not abuse its discretion in overruling SapaNajin's motion for new trial on the basis of prosecutorial misconduct. On this record, the prosecutor's statements during closing argument regarding SapaNajin's postarrest, pre-*Miranda* silence did not constitute misconduct in light of SapaNajin's trial testimony. This assignment of error is without merit.

*Intoxication Defense.*

On appeal, SapaNajin argues that the trial court erred in refusing to give the following jury instruction on the defense of intoxication:

> There has been evidence that the Defendant was under the influence of drugs at the time that the crime with which he is charged was committed. Intoxication is a defense only when a person's mental abilities were so far overcome by

the use of alcohol that he could not have had the required intent. You may consider evidence of alcohol use along with all other evidence in deciding whether the Defendant had the required intent.

Brief for appellant at 12.

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002). Initially, we note that SapaNajin failed to request the above instruction at trial. Therefore, we review for plain error.

■ First, we note that SapaNajin's tendered instruction is a correct statement of the law. Ordinarily, voluntary intoxication does not justify or excuse a crime unless an accused is intoxicated to an extent or degree that the accused is incapable of forming the intent required as an element of the crime charged. *State v. Cook*, 257 Neb. 693, 601 N.W.2d 501 (1999). Whether jury instructions given by a trial court are correct is a question of law. *State v. Bao, supra.*

The next question is whether SapaNajin's tendered instruction is warranted by the evidence. On this record, SapaNajin did not raise the defense of intoxication at any time prior to this appeal. Rather, SapaNajin alleged that the coat he was wearing belonged to Maher and that all of the methamphetamine found on him by police on October 24, 1995, was Maher's.

Even if SapaNajin had raised intoxication as a defense at trial, the record does not support an instruction on that defense. Although the record shows that SapaNajin was intoxicated on October 24, 1995, SapaNajin presented no evidence to support the requirement that he was intoxicated to such an extent that he was incapable of forming the requisite intent to intentionally or knowingly possess a controlled substance. Therefore, the trial court did not err in failing to instruct the jury on the defense of intoxication.

*Insufficiency of Evidence.*

On appeal, SapaNajin argues that the evidence at trial was wholly insufficient to warrant a rational fact finder's determining

that SapaNajin intentionally and knowingly possessed a controlled substance.

Section 28-416(3) provides:

> A person knowingly or intentionally possessing a controlled substance, except marijuana, unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by the act, shall be guilty of a Class IV felony.

■ Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Utter*, 263 Neb. 632, 641 N.W.2d 624 (2002).

SapaNajin contends that he did not intentionally or knowingly possess methamphetamine because the drugs were found in a coat he had just borrowed from Maher. SapaNajin further argues that it was uncontradicted that Maher owned both the coat and its contents.

While it is true that SapaNajin and Maher testified that the coat SapaNajin was wearing at the time of his arrest belonged to Maher, the jury was entitled to reject both SapaNajin's and Maher's testimonies to that effect. Additionally, as noted above, the State properly brought out the fact that SapaNajin first stated at trial that the coat was not his. SapaNajin testified that he did not tell the officers after his arrest that the coat and its contents did not belong to him. The jury was entitled to consider this evidence in reaching its verdict. We conclude that the evidence taken most favorably to the State is sufficient to support SapaNajin's conviction for possession of methamphetamine.

*Ineffective Assistance.*

On appeal, SapaNajin contends that he was denied effective assistance of counsel at the trial level in violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the

Nebraska Constitution. First, SapaNajin argues that he was denied effective assistance of counsel by his trial counsel's failure to object to the improper remarks pertaining to SapaNajin's silence after arrest made by the prosecutor during closing argument. Given our conclusion that the prosecutor's remarks were not improper, we dismiss SapaNajin's claim in that regard.

Second, SapaNajin argues that he was denied effective assistance of counsel "by trial counsel's failure to request a jury instruction on the defense of intoxication." Brief for appellant at 18. Because we concluded above that SapaNajin's requested instruction on intoxication was not warranted by the evidence, SapaNajin's ineffective assistance of counsel argument is without merit.

## CONCLUSION

After reviewing the record, we conclude that the trial court did not err in overruling SapaNajin's motion for new trial based on prosecutorial misconduct during closing arguments or in refusing to give a jury instruction on the defense of intoxication. We also conclude that the evidence at trial was sufficient to convict SapaNajin of the charge of possession of methamphetamine and that SapaNajin was not denied effective assistance of counsel at the trial level.

AFFIRMED.